ROBERT A. CHAISSON, Judge.
12Pefendant, Kelin Harris, appeals his conviction for simple burglary as well as his multiple offender adjudication and sentence. For the reasons that follow, we affirm defendant’s conviction and sentence, *1180 and we grant appellate counsel’s motion to withdraw as attorney of record.

PROCEDURAL HISTORY

On July 28, 2011, the Jefferson Parish District Attorney filed a bill of information charging defendant with simple burglary in violation of LSA-R.S. 14:62. At his arraignment, defendant pled not guilty. Defendant then filed motions to suppress evidence and statement, which were denied after a hearing on March 7, 2012.
On August 20, 2012, defendant withdrew his not guilty plea and, after being advised of his rights, pled guilty as charged to simple burglary. In accordance with 13the plea agreement, the trial court sentenced defendant to six years imprisonment with the Department of Corrections. On the same day, the State filed a multiple offender bill of information, alleging that defendant was a second felony offender. Defendant stipulated to the allegations in the multiple offender bill. The trial judge then vacated defendant’s original sentence and, in accordance with the plea agreement, sentenced defendant again to six years imprisonment with the Department of Corrections. This enhanced sentence was imposed without benefit of probation or suspension of sentence and was ordered to run concurrently with any other sentence defendant may be serving. Defendant now appeals.

ANDERS BRIEF

Under the procedure set forth in State v. Benjamin, 573 So.2d 528, 530-31 (La.App. 4 Cir.1990),[1] appointed appellate counsel has filed an Anders brief pursuant to Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967) and State v. Jyles, 96-2669 (La.12/12/97), 704 So.2d 241 (per curiam), asserting that she has thoroughly reviewed the trial court record and “can find no non-frivolous issues to raise on appeal and can find no ruling of the trial court which arguably supports the appeal.” Accordingly, appointed counsel requests to withdraw as attorney of record.
In Anders, the United States Supreme Court stated that appointed appellate counsel may request permission to withdraw if she finds the case to be wholly frivolous after a conscientious examination of it.[2] The request must be accompanied by “a brief referring to anything in the record that might arguably support the appeal” so as to provide the reviewing court “with a basis for |4determining whether appointed counsel have fully performed their duty to support their clients’ appeals to the best of their ability” and to assist the reviewing court “in making the critical determination whether the appeal is indeed so frivolous that counsel should be permitted to withdraw.” McCoy v. Court of Appeals of Wisconsin, Dist. 1, 486 U.S. 429, 439, 108 S.Ct. 1895, 1902, 100 L.Ed.2d 440 (1988).
In State v. Jyles, 704 So.2d at 241, the Louisiana Supreme Court stated that an Anders brief need not tediously catalog every meritless pretrial motion or objection made at trial with a detailed explanation of why the motions or objections lack merit. The Supreme Court explained that an Anders brief must demonstrate by full *1181 discussion and analysis that appellate counsel “has cast an advocate’s eye over the trial record and considered whether any ruling made by the trial court, subject to the contemporaneous objection rule, had a significant, adverse impact on shaping the evidence presented to the jury for its consideration.” State v. Jyles, supra.
When conducting a review for compliance with Anders, an appellate court must conduct an independent review of the record to determine whether the appeal is wholly frivolous. If, after an independent review, the reviewing court determines there are no non-frivolous issues for appeal, it may grant counsel’s motion to withdraw and affirm the defendant’s conviction and sentence. However, if the court finds any legal point arguable on the merits, it may either deny the motion and order the court-appointed attorney to file a brief arguing the legal point identified by the court, or grant the motion and appoint substitute appellate counsel. State v. Bradford, 95-929 (La.App. 5 Cir. 6/25/96), 676 So.2d 1108, 1110.
|sIn this case, defendant’s appellate counsel asserts that after a conscientious and thorough review of the record, she could find no non-frivolous issues to raise on appeal. Appellate counsel notes that there is no trial court ruling to challenge, recognizing that the plea was not under State v. Crosby, 338 So.2d 584 (La.1976). She further explains that she considered whether to raise an issue regarding exces-siveness of the sentence, but was compelled to conclude that such a claim would be frivolous. Counsel acknowledges defendant’s claim that he was not told that his sentence would be served as flat time and that his attorney represented to him and his family that he was only going to have to serve 85 percent of the sentence. However, appellate counsel asserts that she has reviewed the record and this representation by defendant is not borne out in the record. Counsel contends that defendant was informed of the sentencing range he faced and that the six-year sentence would not be regarded as constitutionally excessive or made under false representation.
Along with her brief, appellate counsel has filed a motion to withdraw as attorney of record, which states that she has made a conscientious and thorough review of the trial court record and could find no non-frivolous issues to raise on appeal and no rulings of the trial court that would arguably support the appeal. She further asserts that she notified defendant of the filing of her motion to withdraw and she advised defendant of his right to file a pro se brief in this appeal. Additionally, this Court sent defendant a letter -by certified mail informing him that an Anders brief had been filed and that he could file a pro se supplemental brief. Defendant has filed a pro se brief, raising several issues which will be addressed herein, subsequent to our review of the record.
Our independent review of the record supports appellate counsel’s assertion that there are no non-frivolous issues to be raised on appeal. The bill of 1 ^information properly charged defendant and plainly and concisely stated the essential facts constituting the offense charged. It also sufficiently identified defendant and the crime charged. See generally LSA-C.Cr.P. arts. 464-466. Further, as reflected by the minute entries and commitment, defendant appeared at each stage of the proceedings against him. He attended his arraignment, his guilty plea proceedings, his sentencing, and his multiple offender proceedings.
In addition, defendant pled guilty as charged to simple burglary. If a defendant pleads guilty, he normally waives all *1182 non-jurisdictional defects in the proceedings leading up to the guilty plea and precludes review of such defects either by appeal or post-conviction relief. State v. Wingerter, 05-697 (La.App. 5 Cir. 3/14/06), 926 So.2d 662, 664. In the instant case, defendant filed motions to suppress evidence and statement that were denied after a hearing. However, defendant did not preserve these rulings for review under the holding in State v. Crosby, supra.
Additionally, our review of the record reveals no irregularities in defendant’s guilty plea to simple burglary. Once a defendant is sentenced, only those guilty pleas that are constitutionally infirm may be withdrawn by appeal or post-conviction relief. A guilty plea is constitutionally infirm if it is not entered freely and voluntarily, if the Boykin,[3] colloquy is inadequate, or when a defendant is induced to enter the plea by a plea bargain or what he justifiably believes was a plea bargain and that bargain is not kept. State v. McCoil, 05-658 (La.App. 5 Cir. 2/27/06), 924 So.2d 1120, 1124.
The record shows that defendant was aware he was pleading guilty to one count of simple burglary. Further, on the waiver of rights form and during the colloquy with the trial judge, defendant was advised of his right to a judge or jury 17trial, his right to confrontation, and his privilege against self-incrimination. On the waiver of rights form, defendant initialed next to each of these rights and signed the form, indicating that he understood he was waiving these rights by pleading guilty. During the colloquy with the trial judge, defendant also indicated that he understood that he was waiving these rights.
During his guilty plea proceedings, defendant further indicated that he was satisfied with the way his attorney and the trial judge handled his case. He stated that he had not been forced, coerced, or threatened into pleading guilty. He also indicated that he understood that pleading could result in deportation if he was not a citizen and that his guilty plea could be used to enhance a penalty for any future conviction. Defendant indicated that he understood the possible legal consequences of pleading guilty, but wished to plead guilty. Defendant was also informed during the colloquy and by means of the waiver of rights form of the sentencing range for the offense as well as the actual penalty that would be imposed upon acceptance of his guilty plea. After his colloquy with defendant, the trial judge accepted defendant’s guilty plea as knowingly, intelligently, freely, and voluntarily made.
We have also reviewed the multiple offender proceedings and conclude that defendant was sufficiently advised of his multiple offender rights. The waiver of rights form, in conjunction with the colloquy between the trial judge and defendant, indicates that defendant understood that by stipulating to the allegations in the multiple offender bill, he was giving up his right to a hearing and his right to remain silent throughout the hearing. Defendant was also advised of his potential sentencing range as a multiple offender as well as the actual sentence that would be imposed. Throughout the multiple offender proceedings, defendant indicated that he was satisfied with the way his attorney and the court had handled his case and |sthat he had not been forced, coerced, or threatened into pleading guilty. Defendant further indicated that he understood the possible legal consequences of pleading guilty and wished to plead guilty because he was in fact guilty. His stipulation was accepted by the judge as knowingly, intelligently, freely, and voluntarily made.
*1183 We further note that defendant’s enhanced sentence was imposed in accordance with the terms of the plea agreement on the multiple bill. LSA-C.Cr.P. art. 881.2(A)(2) precludes a defendant from seeking review of his sentence imposed in conformity with a plea agreement, which was set forth in the record at the time of the plea. State v. Washington, 05-211 (La.App. 5 Cir. 10/6/05), 916 So.2d 1171, 1173. In addition, defendant’s sentence falls within the sentencing range prescribed by statute. See LSA-R.S. 15:529.1 and LSA-R.S. 14:62.
Based on the foregoing, we find that the guilty plea and multiple offender proceedings do not present any issues for appeal. Because appellate counsel’s brief adequately demonstrates by full discussion and analysis that she has reviewed the trial court proceedings and cannot identify any basis for a non-frivolous appeal, and an independent review of the record supports counsel’s assertion, we grant appellate counsel’s motion to withdraw as attorney of record.

PRO SE ASSIGNMENTS OF ERROR

In his pro se supplemental brief, defendant sets forth three assignments of error, in which he raises issues relating to the voluntariness of his guilty plea and ineffective assistance of appellate counsel. We have reviewed all of defendant’s claims and for the reasons that follow, we find no merit to his arguments.

Voluntariness of Guilty Plea

In his first two assigned errors, defendant contends that his guilty plea was not knowingly and voluntarily entered, but rather was induced by promises of parole eligibility by both the prosecutor and his attorney. First, defendant argues 13that the prosecution induced him into pleading guilty by promises of parole eligibility, pointing to the following representation made during the colloquy for the multiple bill:
Q. And that will be without the benefit of probation—
THE COURT: Is it probation and suspension but he’s eligible for parole?
LAW CLERK: Yes, sir.
STATE: He’s eligible for parole.
BY THE COURT:
Q. You understand that?
A. Yes, sir.
Second, defendant argues that his guilty plea was involuntary and not intelligently entered because counsel said nothing when the foregoing discussion on sentencing took place. Additionally, defendant contends that his counsel promised him that he would receive parole eligibility and would serve no more than 85 percent of the actual sentence. Defendant requests specific performance of the considerations and inducements which caused him to plead guilty or requests that he be allowed to withdraw his guilty plea.
It is well settled law that a guilty plea is constitutionally infirm when a defendant is induced to enter the plea by a plea bargain or what he justifiably believes was a plea bargain, and that bargain is not kept. State v. Dixon, 449 So.2d 463, 464 (La.1984). However, if a defendant’s misunderstanding is not induced by or attributed to representations made by the district attorney or the trial court, there is no ground for invalidating the guilty plea. State v. Vaurigaud, 96-807 (La.App. 5 Cir. 2/12/97), 690 So.2d 110, 112, writ denied, 97-0666 (La.9/19/97), 701 So.2d 165. When the record establishes that an accused was informed of and |inwaived his right to trial by jury, to confront his accusers and against self-incrimination, the burden shifts to the accused to prove that despite this record his guilty plea was involuntary. State v. Harrell, 09-364 (La. *1184 App. 5 Cir. 5/11/10), 40 So.3d 311, 321, writ denied, 10-1377 (La.2/10/12), 80 So.3d 473.
In the present case, there is nothing in the record before us to suggest that defendant’s plea was constitutionally infirm. As noted earlier in this opinion, the record of defendant’s guilty plea indicates that he was advised of and waived his right to trial by jury, his right to confront his accusers, and his privilege against self-incrimination. Moreover, with regard to sentencing on the simple burglary charge, both the waiver of rights form and the colloquy between defendant and the trial court show that defendant was advised that he faced a sentencing range of zero to twelve years with the Department of Corrections. Moreover, defendant was clearly advised that, upon acceptance of his guilty plea, he would receive a sentence of six years imprisonment to be served with the Department of Corrections, that he would be given credit for time served, and that his sentence would run concurrently with any other sentences he was serving. Defendant indicated that he understood his sentencing exposure and the actual sentence that would be imposed.
Also, at the multiple offender proceedings, the trial court explained to defendant that he faced a sentencing range of six to twenty-four years with the Department of Corrections, and that his actual sentence would be six years with the Department of Corrections to run concurrently with any other sentences he was serving. Defendant was also advised that the sentence would be imposed without benefit of probation or suspension of sentence. Defendant was told that he would be eligible for parole. Also, the waiver of rights form signed by defendant clearly showed that defendant was advised of and understood his potential sentencing ^exposure and the actual sentence that would be imposed upon acceptance of his stipulation to the multiple bill. Defendant was aware on the waiver of rights form that his sentence would be imposed without benefit of probation or suspension.
The record shows that defendant was sentenced in accordance with the plea agreement that was set forth in the record. In particular, the trial court sentenced defendant, as a second felony offender, to six years with the Department of Corrections without benefit of probation or suspension. Defendant was not denied parole eligibility at the time of his plea.
According to defendant, after he “arrived at DOC he was advised that he was not eligible for 85% or Parole and would have to serve his sentence flat.” Defendant then wrote a letter to the district court requesting that his six-year enhanced sentence be vacated and corrected based on his belief that he would only serve 85 percent of his sentence and then be granted a parole date. The trial court denied defendant’s request to vacate his sentence finding that the record did not support defendant’s claim that he was promised parole eligibility in exchange for his plea.
Having reviewed the record, we agree with the trial court and with appellate counsel’s statement in her Anders brief that the record does not support defendant’s assertion. There is absolutely no representation in the record about defendant serving only 85 percent of his sentence. The discussion about parole eligibility, that defendant references in his brief, clearly pertains to the sentencing provisions of the statutes to which defendant was pleading guilty. Those statutes specifically allow for parole eligibility. LSA-R.S. 14:62 does not require a restriction of benefits, and therefore, under LSA-R.S. 15:529.1(G), the enhanced |12sentence was required to be without ben- *1185 efít of probation or suspension of sentence only and parole was not restricted.
Defendant was not denied parole eligibility under the plea agreement, but was apparently denied it based on other statutory criteria for parole consideration. Generally, the Department of Public Safety and Corrections administers the standards governing parole eligibility and determines whether a particular inmate is eligible for parole consideration by the Board of Parole. State v. Brown, 12-0872 (La.5/7/13), 118 So.3d 332, 335 n. 2. In determining parole eligibility dates, the Department looks to the applicable statutory criteria set out in LSA-R.S. 15:574.4, and “administers these standards and criteria by applying them, as well as other relevant statutes and interpretative jurisprudence, to determine whether or not a particular inmate is parole eligible, i.e., eligible for parole consideration by the board.”
The issue of whether a trial court needs to advise defendant of his parole ineligibility at the time of his guilty plea has been addressed on numerous occasions. It has been consistently held that “the trial court is only required to designate whether a defendant is entitled to parole under the statute of conviction, ... the trial court was not required to inform the defendant that good time or parole would be barred under La.R.S. 15:574.4(B).” State v. Fontenot, 06-226 (La.App. 3 Cir. 7/12/06), 934 So.2d 935, 939.
In State v. Lewis, 30,536 (La.App. 2 Cir. 4/8/98), 711 So.2d 383, the defendant raised an argument similar to the one advanced by defendant in the instant case. In Lewis, after defendant pled guilty to drug related charges, he discovered that he was not eligible for parole under LSA-R.S. 15:574.4 because he was a third felony offender. On appeal, he argued that his plea was not voluntary because he was not informed of his ineligibility for parole. The appellate court |1sheld that the trial court did not have to inform him that he was ineligible for parole because it was not part of the statute under which he pled guilty.
Likewise, the defendant in State v. Hartshorn, 09-47 (La.App. 5 Cir. 11/10/09), 25 So.3d 172, 179-81, writ denied, 09-2654 (La.6/4/10), 38 So.3d 298, raised a similar argument to the one raised by defendant herein. In Hartshorn, the defendant argued that the sentence he received was not as agreed upon in the plea agreement because he pled guilty with the understanding that he would be eligible for parole and good time credit. This Court found that the defendant was precluded from seeking review of his sentence imposed in conformity with the plea agreement and that there was nothing in the record to support his allegations that he was promised parole eligibility and good time credit in his enhanced sentence or that the State violated the terms of the plea agreement. This Court also recognized that the trial court was not required to inform the defendant of the minimum sentences relating to good time or parole as affected by the classification of the crime as a crime of violence.
Based on the foregoing, we find that defendant’s guilty plea was knowingly and voluntarily made. The sentence was imposed in accordance with the plea agreement and was not based on any misrepresentations about parole eligibility. Accordingly, the arguments raised by defendant in his first two pro se assigned errors are without merit.

Ineffective Assistance of Counsel

In his third pro se assignment of error, defendant contends that his counsel on appeal was ineffective in failing to research the law applicable to his case prior to filing an Anders brief. Defendant complains that if counsel would have done such *1186 research she would have discovered errors as assigned in defendant’s two pro |14se assignments relating to the voluntariness of his plea. He contends that she should be ordered to file a supplemental brief.
Initially, it is noted that counsel did mention in her brief that defendant complained that there was a promise regarding parole eligibility. However, she chose not to raise the issue after she found nothing in the record to support that such a representation was made.
Nevertheless, even assuming appellate counsel’s performance has been deficient, defendant has not been prejudiced as a result.[4] This Court has conducted an independent review of the record, which failed to disclose any non-frivolous appealable issues. Additionally, as evidenced by the discussion herein, the issues raised by defendant are without merit. See State v. Miller, 12-126 (La.App. 5 Cir. 10/16/12), 102 So.3d 956, 963, writ denied, 12-2487 (La.5/31/13), 118 So.3d 388. Accordingly, defendant’s claim of ineffective assistance of counsel is likewise without merit.

ERROR PATENT REVIEW

We have also reviewed the record for errors patent in accordance with LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Wetland, 556 So.2d 175 (La.App. 5 Cir.1990). Our review reveals no errors that require corrective action.
Accordingly, we affirm defendant’s conviction and sentence, and we grant appellate counsel’s motion to withdraw as counsel for defendant.

CONVICTION AND SENTENCE AFFIRMED; MOTION TO WITHDRAW GRANTED

. The procedure set forth in Benjamin for compliance with Anders was sanctioned by the Louisiana Supreme Court in State v. Mouton, 95-0981 (La.4/28/95), 653 So.2d 1176, 1177 (per curiam ), and adopted by this Court in State v. Bradford, 95-929 (La.App. 5 Cir. 6/25/96), 676 So.2d 1108, 1110-11.

. The United States Supreme Court most recently reaffirmed its position in Anders in Smith v. Robbins, 528 U.S. 259, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000).

. Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274(1969).

. See Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). According to Strickland v. Washington, in assessing a claim of ineffective assistance of counsel, a two-pronged test is employed. The defendant must show that (1) his counsel’s performance was deficient, and (2) the deficiency prejudiced him. State v. Dussett, 12-356 (La.App. 5 Cir. 12/18/12), 106 So.3d 1203, 1207 n. 3, writ denied, 13-0154 (La.6/21/13), 118 So.3d 410.